201800986/KMR

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Jessica S. Allen |
| v. | : | Magistrate. No. 23-8137 |
| DANIEL DADOUN | : | CRIMINAL COMPLAINT |

I, James R. Haines, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

**SEE ATTACHMENT A**

I further state that I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations, and that this complaint is based on the following facts:

**SEE ATTACHMENT B**

continued on the attached pages and made a part hereof.

_____
James R. Haines, Special Agent
Department of Homeland Security,
Homeland Security Investigations

Special Agent James R. Haines attested to this Affidavit by telephone pursuant to F.R.C.P. 4.1(B)(2)(A) on this 9th day of November, 2023.

for _____
Hon. Jessica S. Allen
United States Magistrate Judge

## ATTACHMENT A

### Counts 1-4
### (Bank Fraud)

On or about the dates listed below, in the District of New Jersey and elsewhere, defendant

### DANIEL DADOUN

did knowingly and intentionally execute and attempt to execute a scheme and artifice to defraud one or more financial institutions, as defined by 18 U.S.C. § 20, namely, Victim-Lender 1, Victim-Lender 2, and Victim-Lender 3, the deposits of which were insured by the Federal Deposit Insurance Corporation, and to obtain any of the moneys, funds, credits, assets, securities, and other property owned by, and under the control of, such financial institution by means of false and fraudulent pretenses, representations, and promises, each of which constitutes a separate count in this Complaint:

| Count | PPP Loan | Approximate Dates | Lender | Approximate Amount |
|---|---|---|---|---|
| 1 | DG Distiservices First Draw PPP Loan | April 2020 to September 2021 | Victim-Lender 1 | $464,806 |
| 2 | Seldat Distribution PPP Loan | April 2020 to September 2021 | Victim-Lender 2 | $2,125,000 |
| 3 | Seldat Staffing PPP Loan | May 2020 to September 2021 | Victim-Lender 3 | $185,162.43 |
| 4 | DG Distiservices Second Draw PPP Loan | February 2021 to August 2022 | Victim-Lender 1 | $464,805 |

In violation of Title 18, United States Code, Sections 1344 and 2.

## Counts 5-6
### (Transacting in Criminal Proceeds)

On or about the dates listed below, in the District of New Jersey and elsewhere, defendant

**DANIEL DADOUN**

knowingly engaged in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a greater value than $10,000, such property having been derived from a specified unlawful activity, that is bank fraud, as follows:

| Count | Approximate Date | Transaction |
|---|---|---|
| 5 | April 23, 2020 | Transfer of $2,125,000 from the Seldat Distribution Bank Account 1 to the Seldat Fashion Bank Account |
| 6 | April 7, 2021 | Transfer of $350,000 from the DG Distiservices Bank Account to an account at Bank 1 |

In violation of Title 18, United States Code, Sections 1957 and 2.

## ATTACHMENT B

I, James R. Haines, am a Special Agent of the Department of Homeland Security, Homeland Security Investigations. The information contained in the complaint is based upon my personal knowledge, as well as information obtained from other sources, including: (a) statements made or reported by various witnesses with knowledge of relevant facts; (b) my review of publicly available information; and (c) my review of evidence, including business records, bank records, and other documents. Because this complaint is being submitted for a limited purpose, I have not set forth every fact that I know concerning this investigation. Where the contents of documents and the actions and statements of others are reported, they are reported in substance and in part, except where otherwise indicated. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

### Overview

1. From in or about April 2020 through in or about August 2022, defendant DANIEL DADOUN made numerous false statements and misrepresentations to fraudulently obtain over $3.2 million in federal COVID-19 emergency relief funds meant for distressed small businesses. DADOUN then diverted the proceeds to his own use, transferring funds among bank accounts that he controlled and using the funds for other business ventures.

### Background

### Individuals and Entities

2. At all times relevant to this Criminal Complaint:

   a. Defendant DANIEL DADOUN resided in New Jersey and elsewhere. Defendant DADOUN was associated with various businesses located in New Jersey, including DG Distiservices, LLC, Seldat Distribution, Inc., Seldat Staffing, Inc., Seldat Fashion LLC, and 200 S. Pemberton Urban Renewal LLC.

   b. DG Distiservices LLC ("DG Distiservices") was a business with operations in Perth Amboy, New Jersey, and elsewhere. DG Distiservices provided staffing services.

   c. Seldat Distribution, Inc. ("Seldat Distribution"), Seldat Staffing, LLC ("Seldat Staffing"), and Seldat Fashion LLC ("Seldat Fashion") were businesses purportedly located in South Plainfield, New Jersey. Seldat Distribution provided services related to warehousing and third-party logistics.

   d. 200 South Pemberton Urban Renewal LLC was a business with a registered address in Perth Amboy, New Jersey. 200 South Pemberton Urban

Renewal LLC was associated with construction of a warehouse in Pemberton, New Jersey.

  e. Victim-Lender 1 was a financial institution headquartered in Charlotte, North Carolina.

  f. Victim-Lender 2 was a financial institution headquartered in Cherry Hill, New Jersey.

  g. Victim-Lender 3 was a financial institution headquartered in Sandy, Utah.

  h. Bank 1 was a financial institution headquartered in New York, New York.

  i. Tax Preparer 1 was a business operated by an individual that provided tax preparation services. Tax Preparer 1 had business operations in Flemington, New Jersey.

  j. Defendant DADOUN had ownership and control over a checking account at Victim-Lender 1 ending in account number 7052 associated with DG Distiservices (the "DG Distiservices Bank Account"). DADOUN and a purported business partner, Individual-1, were signatories to this account.

  k. Defendant DADOUN had sole ownership and control over certain financial accounts at Victim-Lender 2, including a checking account ending in account number 7172 associated with Seldat Distribution (the "Seldat Distribution Bank Account 1"), a checking account ending in account number 7180 associated with Seldat Distribution ("Seldat Distribution Bank Account 2"), and a checking account ending in account number 1234 associated with Seldat Fashion (the "Seldat Fashion Bank Account").

## The Paycheck Protection Program

  l. The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury, responsible for administering and enforcing the tax laws of the United States.

  m. The Social Security Administration ("SSA") was an agency of the United States that administered retirement, disability, survivor, and family benefits.

  n. The Paycheck Protection Program ("PPP") was a COVID-19 pandemic relief program administered by the Small Business Administration ("SBA") that provided forgivable loans to small businesses for job retention and certain other expenses. The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage,

accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

o.  To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was required to provide documentation showing its payroll expenses, such as filed federal income tax documents.

p.  PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

q.  The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, personal residences, clothing, jewelry, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

r.  Victim-Lender 1, Victim-Lender 2, and Victim-Lender 3 were third-party participating lenders in the PPP and federally insured financial institutions as defined in 18 U.S.C. § 20.

## The Scheme to Defraud

3.  From in or around April 2020 through in or around August 2022, in the District of New Jersey, and elsewhere, defendant DADOUN applied for and obtained several PPP loans, receiving approximately $3,239,773.43 in total from the Victim-Lenders.  DADOUN's PPP loan applications included false statements and forged supporting documents that falsified, among other things, the number of employees and the average monthly payroll for the entity.  Once DADOUN received the PPP loan proceeds based on his false representations, he transferred the illicit loan proceeds between and among bank accounts that he controlled.  DADOUN sought forgiveness of the loans through the Victim-Lenders, and the forgiveness applications likewise included false statements and false supporting documents.  As a result of the misrepresentations made to the Victim-Lenders, three loans were forgiven and one was partially forgiven.  DADOUN has not repaid any of the PPP loan funds.

### Goal of the Scheme to Defraud

4.      The goal of the scheme to defraud was to obtain money from Victim-Lender 1, Victim-Lender 2, and Victim-Lender 3, by submitting false and fraudulent PPP loan applications, and to keep the money without repaying it by submitting false and fraudulent PPP loan forgiveness applications to the Victim-Lenders.

### Manner and Means of the Scheme to Defraud

5.      It was part of the scheme to defraud that:

#### DG Distiservices First Draw PPP Loan

a.      On or about April 6, 2020, defendant DADOUN submitted and caused to be submitted a loan application to Victim-Lender 1 seeking a PPP loan of approximately $464,806 on behalf of DG Distiservices (the "DG Distiservices First Draw PPP Loan").

b.      The loan application, which was signed by defendant DADOUN, falsely stated that DG Distiservices had approximately 100 employees and an average monthly payroll of approximately $185,923. In fact, according to IRS and SSA records, DG Distiservices had no employees in 2019 and only four employees in the first quarter of 2020. According to those records, DG Distiservices paid no wages in 2019 and had an average monthly payroll of less than $15,000 in the first quarter of 2020.

c.      As part of the loan application, defendant DADOUN submitted false and fraudulent tax documents, including a false IRS Form 940 for DG Distiservices for tax year 2019, and a false IRS Form 941 for DG Distiservices for the first quarter of 2020. The false Form 940 stated that DG Distiservices had paid approximately $2,156,747 to employees in 2019. This form was never filed with IRS. The false Form 941 stated that DG Distiservices had approximately 453 employees and paid approximately $1,475,228.15 to employees during the period from January 1, 2020 to February 15, 2020. This form was also never filed with IRS.

d.      Defendant DADOUN signed a promissory note for the loan. In reliance on the representations in the loan application, on or about April 28, 2020, Victim-Lender 1 disbursed approximately $464,806—the full amount applied for—to the DG Distiservices Bank Account. The following day, defendant DADOUN transferred approximately $115,000 to a Vietnamese bank account in his name and a bank account in Canada.

e.      On or about September 2, 2021, defendant DADOUN submitted to Victim-Lender 1 an application for forgiveness of the DG Distiservices First Draw PPP Loan. As part of the application for loan forgiveness, defendant DADOUN submitted to Victim-Lender 1 a falsified lease agreement and altered bank

statements. These documents were altered to support false representations made to Victim-Lender 1 regarding DG Distiservices. As a result of misrepresentations made as part of the loan and forgiveness applications, the loan was forgiven.

### Seldat Distribution PPP Loan

f.  On or about April 13, 2020, defendant DADOUN submitted and caused to be submitted a loan application to Victim-Lender 2 seeking a PPP loan of approximately $2,125,000 on behalf of Seldat Distribution (the "Seldat Distribution PPP Loan").

g.  The loan application, which was signed by defendant DADOUN, falsely stated that Seldat Distribution had approximately 400 employees and an average monthly payroll of approximately $850,000. According to IRS records, however, Seldat Distribution had approximately 97 employees during the first quarter of 2020 and an average monthly payroll of approximately less than $170,000.

h.  As part of the loan application, defendant DADOUN also submitted a false IRS Form 941, which stated that Seldat Distribution had approximately 263 employees and paid approximately $624,068 in wages from January 1, 2020 to February 15, 2020. This document was never filed with IRS.

i.  Defendant DADOUN signed a promissory note for the loan. In reliance on the representations made in the loan documentation, on or about April 22, 2020, Victim-Lender 2 disbursed approximately $2,125,000—the full amount applied for—to the Seldat Distribution Bank Account 1. The following day, defendant DADOUN transferred approximately the full amount of the loan, $2,125,000, to the Seldat Fashion Bank Account. Thereafter, on that same day, defendant DADOUN transferred approximately $2,100,000 to the Seldat Distribution Bank Account 2, and then transferred approximately $2,100,000 from the Seldat Distribution Bank Account 2 to the DG Distiservices Bank Account.

j.  On or about September 1, 2021, defendant DADOUN submitted to Victim-Lender 2 an application for forgiveness of the Seldat Distribution PPP Loan. The application stated that Seldat Distribution had 110 employees at the time of the forgiveness application. According to IRS documents, however, Seldat Distribution had approximately three employees in the first quarter of 2021, and no employees for the remainder of 2021.

k.  In support of the forgiveness application, defendant DADOUN submitted a false bank statement that contained several transactions that were altered to support false representations made to Victim-Lender 2 regarding Seldat Distribution. As a result of misrepresentations made as part of the loan and forgiveness applications, the loan was partially forgiven.

**Seldat Staffing PPP Loan**

l. On or about May 11, 2020, defendant DADOUN submitted and caused to be submitted a loan application to Victim-Lender 3 for a PPP loan on behalf of Seldat Staffing (the "Seldat Staffing PPP Loan"). The loan application, which was signed by defendant DADOUN, falsely stated that defendant DADOUN was not the owner of any other business. In fact, defendant DADOUN was an owner of other businesses, including Seldat Distribution and DG Distiservices, for which he had also applied for PPP funding.

m. On the loan application, defendant DADOUN falsely stated that Seldat Staffing had approximately 80 employees and a monthly payroll of approximately $74,064.92. According to IRS and SSA records, however, Seldat Staffing had no employees and paid no wages between 2018 and 2021.

n. As part of the loan application, defendant DADOUN submitted false tax documents, including false IRS Forms 941 that stated that Seldat Staffing had employees and paid wages in 2019. DADOUN also submitted a false IRS Schedule K-1, an attachment to an IRS Form 1065. The document purported to show that Individual-1 was entitled to a 100% share of the profits of Seldat Staffing and that Individual-1 received approximately $96,743 in ordinary business income in tax year 2019. The document, however, contained a false Social Security number for Individual-1 and was never filed with IRS. According to IRS records, Seldat Staffing did not report any income for tax year 2019. These documents were never filed with IRS.

o. As part of the loan application, defendant DADOUN submitted altered bank statements, similar to the altered bank statements provided to Victim-Lenders 1 and 2 with respect to the DG Distiservices and Seldat Distribution PPP Loans.

p. Defendant DADOUN signed a promissory note for the loan. In reliance on the representations made in the loan application, on or about May 27, 2020, Victim-Lender 3 disbursed approximately $185,162.43—the full amount applied for—to the DG Distiservices Bank Account.

q. On or about September 9, 2021, defendant DADOUN submitted to Victim-Lender 3 an application for forgiveness of the Seldat Staffing PPP loan. The forgiveness application falsely stated that Seldat Staffing had approximately 80 employees at the time of the loan application and approximately 35 employees at the time of the forgiveness application. The forgiveness application also falsely stated that Seldat Staffing had payroll costs of approximately $361,585.61 from on or about May 26, 2020 to on or about October 30, 2020. According to IRS and SSA records, however, Seldat Staffing had no employees and paid no wages in 2020. As a result of

misrepresentations made as part of the loan and forgiveness applications, the loan was forgiven.

### DG Distiservices Second Draw PPP Loan

  r. On or about February 22, 2021, defendant DADOUN submitted and caused to be submitted a loan application to Victim-Lender 1 for a "second draw"[1] PPP loan on behalf of DG Distiservices (the "DG Distiservices Second Draw PPP Loan"). The loan application listed Individual-1 as the contact person, but it listed defendant DADOUN's phone number as the contact phone number. The loan application listed a false Social Security number for Individual-1 and was purportedly signed by Individual-1.

  s. The loan application falsely stated that DG Distiservices had approximately 150 employees and an average monthly payroll of approximately $185,922. IRS and SSA records show, however, that in 2020 and 2021, DG Distiservices had a maximum of approximately 63 employees and an average monthly payroll of approximately less than $60,000.

  t. As part of the loan application, defendant DADOUN submitted a false IRS Schedule K-1, similar to the false Schedule K-1 submitted as part of the Seldat Staffing PPP Loan application. The document purported to show that Individual-1 was entitled to a 100% share of the profits of DG Distiservices and that Individual-1 received approximately $96,743 in ordinary business income in tax year 2019. The document, however, contained a false Social Security number for Individual-1 and was never filed with IRS. According to IRS records, DG Distiservices did not report any income for tax year 2019.

  u. As part of the loan application, defendant DADOUN also submitted a falsified letter purportedly signed by Tax Preparer 1 together with documents that purported to reflect financial statements for the fourth quarter of 2019 and 2020 for DG Distiservices. The letter and purported financial statements were not prepared by Tax Preparer 1 and did not reflect accurate financial information regarding DG Distiservices.

  v. Defendant DADOUN signed a promissory note for the loan. In reliance on the representations made in the loan application, on or about April 6, 2021, Victim-Lender 1 disbursed approximately $464,805—the full amount applied for—to the DG Distiservices Bank Account.

---

[1] Certain businesses were eligible for a "second draw" PPP loan after receiving an initial PPP loan. Among other things, to qualify for a "second draw" loan the business had to demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020.

w.  The same day, defendant DADOUN transferred $350,000 to an account at Bank 1, and defendant DADOUN transferred approximately $5,000 to a Vietnamese bank account in his name.  Two days later, DADOUN transferred approximately $70,000 to a bank in Israel.

x.  On or about August 26, 2022, defendant DADOUN submitted an application to Victim-Lender 1 for forgiveness of the DG Distiservices Second Draw PPP Loan. In support of the forgiveness application, defendant DADOUN submitted false bank statements that were altered to support false representations made to Victim-Lender 1 regarding DG Distiservices.  As a result of misrepresentations made as part of the loan and forgiveness applications, the loan was forgiven.

y.  The loan proceeds for the two DG Distiservices PPP Loans and the Seldat Staffing PPP loan were deposited by the Victim-Lenders directly into the DG Distiservices Bank Account. As described above, all but $25,000 of the loan proceeds for the Seldat Distribution PPP loan was also transferred—through other accounts—to the DG Distiservices Bank Account.  Bank records indicate significant spending from the DG Distiservices Bank Account on behalf of 200 South Pemberton Urban Renewal, LLC, an entity controlled by DADOUN, for construction of a multimillion-dollar warehouse in Pemberton, New Jersey.

z.  The total loss to the Victims was approximately $3,239,773.43.