# ANTHONY POPE LAW, P.C.

ATTORNEYS AT LAW

| | |
|---|---|
| NEW JERSEY OFFICE<br>60 PARK PLACE<br>SUITE 1101<br>NEWARK, NJ 07102 | NEW YORK OFFICE<br>275 MADISON AVE.<br>35TH FLOOR<br>NEW YORK, NY 10016 |
| TEL: (973) 344-4406<br>FAX: (973) 344-3201<br>www.anthonypopelawfirm.com | **PLEASE REPLY TO:**<br>**New Jersey Office** |
| **ANTHONY POPE, ESQ.*** | apope@apopefirm.com |

*Certified by the Supreme Court of
New Jersey as a Civil & Criminal Trial Attorney

September 18, 2024

<u>VIA ECF</u>
The Honorable Jessica S. Allen
United States Magistrate Judge
United States District Court
District of New Jersey
50 Walnut Street
Newark, NJ 07102

  Re:  <u>United States v. Daniel Dadoun</u>
     Case No. 23-mj-08137

Dear Judge Allen,

  Defendant Daniel Dadoun submits this Memorandum of Law in support of his application for pre-trial release on conditions pursuant to 18 U.S.C. § 3142. It is respectfully submitted that Mr. Dadoun does not pose an actual risk of flight, is not a danger to the community, and that there are conditions of release which will assure his full compliance with this Court's directives to appear and to answer the charges against him. Mr. Dadoun's character, generosity, and charitable spirit, demonstrated herein and by the attached character letters, only serve to highlight the lack of danger he poses and the absence of any risk of flight in this case. Therefore, in accordance with the recommendation of United States Pretrial Services, we ask for Mr. Dadoun's pre-trial release under any conditions the Court deems suitable, secured by co-signer and proposed third-party custodian, Moti Zilber, as well as three of the defendant's unencumbered properties.

  1. <u>Applicable Law</u>

  Mr. Dadoun comes before this Court presumptively innocent and carries his burden of production to establish that he should be released on bail. The Bail Reform Act requires the release of a defendant on the "least restrictive" conditions necessary to "reasonably assure the appearance of the person as required and the safety of any

1

other person and the community." *See* 18 U.S.C. § 3142(g). To that end, a court "shall order the pretrial release of a person on personal recognizance, or upon the execution of an unsecured appearance bond in an amount specified by the court, … unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b) (emphasis added). Both the Bail Reform Act and case law make clear that it is only a limited group of offenders who should be denied bail pending trial.

Mr. Dadoun was charged by criminal complaint with bank fraud in violation of 18 U.S.C. § 1344 and transacting in criminal proceeds, in violation of 18 U.S.C. § 1957 (ECF Document #1). Neither charge carries a presumption of detention. Even if the Court were to apply the presumption, it is rebuttable and a defendant bears only a limited burden of production – not a burden of persuasion – to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight. *United States v. Perry*, 788 F.2d 100, 114-15 (3d Cir. 1986). And, notwithstanding the presumption, the Government is still required to establish that no assortment of bail conditions will assure the defendant's presence and the safety of others. *See* 18 U.S.C. § 3142(e)-(f). Thus, it is respectfully submit that, after an analysis of each of the statutory factors set forth in 18 U.S.C. § 3142(g), Mr. Dadoun will be able to satisfy his "limited burden of production" and the Government will be unable to satisfy any prong of its burden of persuasion, namely, that he presents a danger to the community or risk of flight that no assortment of bail conditions cannot eliminate.

Detaining Mr. Dadoun unnecessarily will also unjustly impair his ability to defend himself. When an individual is in custody, the Bail Reform Act "permit[s] the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). Moreover, the Bail Reform Act "permit[s] the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). "Pretrial detention can have a devastating effect on defendants' ability to prepare for trial."[1] Communication between lawyer and client is much more limited when the client is detained. Those detained pretrial have a lower likelihood of obtaining an acquittal than those who remain at liberty before trial to assist with their defense. *Id.* at 22-23.

---

[1] *See* United Nations Office on Drugs and Crime, "Handbook on Strategies to Reduce Overcrowding in Prisons" at 22-23 (October 2013), available at: https://www.unodc.org/documents/justice-and-prison-reform/Overcrowding_in_prisons_Ebook.pdf (hereinafter "Overcrowding in Prisons") (citing various studies).

Even though the Bail Reform Act of 1984, *18 U.S.C. 3141-3150*, may have expanded the circumstances in which pretrial detention is applicable, pretrial detention is still the exception and not the rule. Pretrial detention is appropriate "only for a 'limited group' of offenders ..., i.e., the 'small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons.'" *United States v. Traitz*, 807 F.2d 322, 325 (3d Cir.1986) (quoting S.Rep. No. 98-225, 98th Cong., 2d Sess. 6-7, *reprinted in* 1984 U.S. Code Cong. & Admin.News 3182, 3189). "[T]he dangerousness determination involves a prediction of the detainee's likely future behavior. Such a prediction explores not the external world of past events but the inner territory of the detainee's intentions." *United States v. Perry*, 788 F.2d 100, 114 (3d Cir. 1986).

2. <u>Mr. Dadoun is not a Danger to the Community or a Flight Risk</u>

Daniel Dadoun was born into a Jewish family to mother Esther Marelly and father David Dadoun in Morocco. His childhood was tumultuous, lacking safety and security. His father was extremely abusive to Daniel, his siblings, and his mother. Neighbors and friends recall often seeing members of the family walking around with injuries and bruises. Sadly, a history of abuse extended up both sides of Daniel's family tree. Daniel's maternal grandfather was extremely abusive to his family, and Daniel's maternal grandmother escaped the abuse by fleeing and leaving Daniel's mother behind. The abuse and abandonment Daniel's mother endured left her with deep psychological wounds. Rather than healing from the trauma, she repeated the dynamic by marrying an abusive man—Daniel's father. Daniel's mother eventually fled her abuse as well, abandoning Daniel who was left with his abusive father.

When Daniel was five years old, his father was arrested. Antisemitism was rampant and pervasive in the Morocco of Daniel's youth, and, being Jewish, Daniel's father was targeted with false accusations of selling expired drugs which led to his incarceration. This was an extremely traumatic time for Daniel and his siblings. A shy child, Daniel became a target of insult and bullying by peers, as his father's situation became a spectacle in the community. Visiting his father in the prison was a terrifying experience that left him traumatized.

Although in some ways Daniel was safer in those years with his father away from the home, life was challenging for him and his siblings without their father there. Despite the abuse and early childhood instability he endured, he managed to hold on to an innate positivity and drive to succeed, to overcome the generational inheritance of violence and adversity in his family. As Daniel grew, he chose not to become angry or bitter but rather to take a path of resilience and strength and, ultimately, break the cycle of abuse.

When Daniel was sixteen, he ran away from his father's home and traveled to Israel to reunite with his mother. After their reunion in Israel, he took odd jobs to help contribute to the household. In 1994, Daniel got married and had three

3

daughters, all of whom are now adults who miss their father very much. Despite his marriage eventually ending in divorce, he and his ex-wife, Sophie, still remain close and enjoy a deep and respectful relationship.

Daniel began his business, Seldat, which grew exponentially and was known as a pleasant and safe environment to work in. His mission was to ensure that every employee or associate was treated with great respect. He was a compassionate boss, providing catered lunch every day and generous salary and benefits. Many of Daniel's current and previous employees shared their experiences and gratitude to Daniel in the attached character letters. The letters convey deep appreciation, respect, and admiration for Daniel.

Daniel's heart always looked at the struggles people endured in life, and he became a true philanthropist and humanitarian. As a practicing member of the Jewish faith, he also founded Lev Echad, a foundation dedicated to the vision of growing and empowering the Torah and its scholars and supporting individuals and communities in every possible aspect of the course of human life. As evidenced from the attached donation receipts, Daniel has donated much of his own money to Lev Echad. He had also developed programs and initiatives such as the Children and Youth Project, the Challenged Youth Project, financial support in Israeli Yeshivas teaching Torah to countless Jewish men and women, and The Great Matchmaking Project.

Daniel is also focused on serving various needy communities. To that end, he supports eight Israeli dental clinics to deliver dental treatment to underserved communities. He enlists the dentists and pays the rent for these clinics. His generosity and altruism are known broadly, and those who have been on the receiving end of his charitable endeavors, including those who have worked at or received treatment from the dental clinics he's helped support, have also expressed their gratitude and support in the attached character letters. As Dr. Steven Katz, DDS, writes, "These [dental] clinics are open to any poor person, non-discriminatory of race, color, or religion. I could only have done this with the help and support of Daniel Dadoun."

Daniel is currently married to the love of his life, Odelya Golan. They are eternally grateful for the bond they share, for the incredible healing they both receive from a relationship filled with love, truth, respect, kindness and trust. Odelya has two daughters from a previous marriage, whom Daniel has treated and considers as his own. Odelya's daughters were abandoned by their biological father, and as someone who has experienced parental abandonment, Daniel has given them the safety, security, and a father they needed.

Daniel is sorely missed by his beloved wife and daughters, all of whom reside in Israel. He is also missed by his company and foundation, and the friends and families who's lives he's helped improved. They all pray for his release and safety every day. Due to his faith, Daniel has refused to take his yarmulke off while incarcerated in the Essex County Correctional Facility, opening him up to vicious and violent antisemitism on an almost daily basis by his fellow inmates. Despite this

violence and a myriad of threats, he persists in wearing his yarmulke every day, refusing to compromise his faith for his own personal health and safety.

Mr. Dadoun does not have any criminal history or record, further evidencing that he does not pose a risk of harm or danger to anyone. Moreover, the allegations in this case (bank fraud and transacting in criminal proceeds) are non-violent offenses, and there is no allegation that Mr. Dadoun's alleged conduct caused any physical harm to any person. His documented history of charity and generosity demonstrate that he is not someone that would violate any release conditions the Court imposes.

Similarly, Mr. Dadoun is not a flight risk. Even though he is not a United States citizen, this does not mean he would not remain in the United States if released. While he has no intention of fleeing, the surrendering of all travel documents, as well as electronic monitoring and/or home detention, are conditions that could be imposed to further lessen any risk of flight.

As a result of the foregoing, it is unbelievably clear that there are reasonable conditions that can be imposed on Mr. Dadoun that would guarantee the Court and the Government that he would not pose a risk of flight or danger to the community at large.

3. Bail Package

As stated above, U.S. Pretrial Services has recommended Mr. Dadoun's release. Pretrial Services has also approved a co-signer and custodian, Mr. Moti Zibler, whom Mr. Dadoun would reside with, as his home and family remain in Israel. In addition to a custodian and co-signer, Mr. Dadoun has also offered three properties to be pledged as security for his release, all of which have been confirmed by Pretrial Services to be unencumbered and of significant value.[2] All of these properties are owned by LLC.'s that are directly owned by Daniel Dadoun.

In addition to monitoring by Pretrial Services, Mr. Dadoun would be compliant under any release conditions the Court finds suitable in this case—no matter how lenient or strict they may be.

Conclusion

Mr. Dadoun respectfully submits that the Government cannot satisfy its burden that he clearly and convincingly poses a threat to the community or risk of flight that the proposed conditions of release cannot satisfy. Accordingly, the defense respectfully requests that the Court release Mr. Dadoun under any conditions deemed suitable.

---

[2] These three properties are:
1. 120 Raymon Road in Washington Township, Warren County, New Jersey.
2. 294 Birmingham Road in Pemberton Township, Burlington County, New Jersey.
3. Rt. 68 DiTullio Farm, Mansfield Township, Burlington County, New Jersey.

5

                    Respectfully submitted,
                    **ANTHONY POPE LAW, P.C.**

                    /s/ *Anthony Pope*
                    ANTHONY POPE, ESQ.