

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

970 Broad Street, 7ᵗʰ floor
Newark, New Jersey 07102

973-645-2700

KMR/PL AGR
2018R00986

February 5, 2025

RECEIVED
APR 08 2025
ROBERT KIRSCH
U.S. DISTRICT JUDGE

Anthony J. Pope, Esq.
The Pope Law Firm, P.C.
60 Park Place, Suite 1101
Newark, NJ 07102

Re: <u>Plea Agreement with Daniel Dadoun</u>
(25-CR-215)

Dear Mr. Pope:

This letter sets forth the plea agreement between your client, Daniel Dadoun, and the United States Attorney for the District of New Jersey ("this Office"). This offer will expire on February 19, 2025, if it is not accepted in writing by that date. If Dadoun does not accept this plea agreement, his sentencing exposure could increase beyond what is discussed in this plea agreement as a result of this Office's investigation.

<u>Charge</u>

Conditioned on the understandings specified below, this Office will accept a guilty plea from Dadoun to a two-count Information, which charges Dadoun with: bank fraud, in violation of 18 U.S.C. § 1344 (Count 1); and money laundering, in violation of 18 U.S.C. § 1957 (Count 2). If Dadoun enters a guilty plea and is sentenced on these charges and otherwise fully complies with this agreement, this Office will not initiate any further criminal charges against Dadoun for, from in or around April 2020 to in or around August 2022, engaging in a scheme to fraudulently obtain loans authorized by the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, including federal Paycheck Protection Program ("PPP") loans, seeking forgiveness of those loans, and causing those loan funds to be deposited and transferred into various bank accounts that Dadoun controlled; provided that: (1) Dadoun admits under oath at the time of his guilty plea to willfully filing fraudulent PPP loan and forgiveness applications that caused the U.S. Small Business Administration to disburse approximately $3.2 million in loan proceeds, and (2) this conduct is taken into account as relevant conduct by the Court at the time of sentencing pursuant to U.S.S.G. § 1B1.2(c).

But if a guilty plea in this matter is not entered for any reason or a guilty plea or judgment of conviction entered in accordance with this agreement does not remain in full force and effect, this Office may reinstate any dismissed charges and initiate any other charges against Dadoun even if the applicable statute of limitations period for those charges expires after Dadoun signs this agreement, and Dadoun agrees not to assert that any such charges are time-barred.

Sentencing

The violation of 18 U.S.C. § 1344 to which Dadoun agrees to plead guilty in Count 1 of the Information carries a statutory maximum prison sentence of 30 years and a statutory maximum fine equal to the greatest of (1) $1,000,000, or (2) twice the gross amount of any pecuniary gain that any persons derived from the offense, or (3) twice the gross amount of any pecuniary loss sustained by any victims of the offense.

The violation of 18 U.S.C. § 1957 to which Dadoun agrees to plead guilty in Count 2 of the Information carries a statutory maximum prison sentence of 10 years and a statutory maximum fine equal to the greatest of (1) $250,000, or (2) twice the gross amount of any pecuniary gain that any persons derived from the offense, or (3) twice the gross amount of any pecuniary loss sustained by any victims of the offense, or (4) twice the amount of the criminally derived property involved in the transaction. The prison sentences on Counts 1 and 2 may run consecutively to any prison sentence Dadoun is serving or is ordered to serve. Fines imposed by the sentencing judge may be subject to the payment of interest.

The sentence to be imposed upon Dadoun is within the sole discretion of the sentencing judge, subject to the provisions of the Sentencing Reform Act, 18 U.S.C. §§ 3551-3742, and the sentencing judge's consideration of the United States Sentencing Guidelines. Those Guidelines are advisory, not mandatory. The sentencing judge may impose any reasonable sentence up to and including the statutory maximum term of imprisonment and the maximum statutory fine. This Office cannot and does not make any representation or promise as to what Guidelines range may be found by the sentencing judge, or as to what sentence Dadoun ultimately will receive.

Further, in addition to imposing any other penalty on Dadoun, the sentencing judge as part of the sentence:

(1)   will order Dadoun to pay an assessment of $100 per count pursuant to 18 U.S.C. § 3013, which assessment must be paid by the date of sentencing;

(2)   must order Dadoun to pay restitution pursuant to 18 U.S.C. § 3663A;

(3) may order Dadoun, pursuant to 18 U.S.C. § 3555, to give reasonable notice and explanation of the conviction to any victims of his offense;

(4) must order forfeiture, pursuant to 18 U.S.C. §§ 982(a)(1) and 982(a)(2);

(5) pursuant to 18 U.S.C. § 3583 may require Dadoun to serve a term of supervised release of not more than five years, with respect to Count One, and three years, with respect to Count Two, which will begin at the expiration of any term of imprisonment imposed. Should Dadoun be placed on a term of supervised release and subsequently violate any of the conditions of supervised release before the expiration of its term, Dadoun may be sentenced to not more than three years' imprisonment with respect to a violation of a term of supervised release imposed in connection with Count One, or two years' imprisonment with respect to a violation of a term of supervised release imposed in connection with Count Two, in addition to any prison term previously imposed, regardless of the statutory maximum term of imprisonment set forth above and without credit for time previously served on post-release supervision, and may be sentenced to an additional term of supervised release.

Restitution

Pursuant to the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, Dadoun agrees to pay full restitution to all victims of his CARES Act loan fraud who were directly harmed by Dadoun's criminal scheme and conduct, in an amount that fully compensates the victims for the losses sustained as a result of those offenses. Dadoun acknowledges and understands that pursuant to 18 U.S.C. § 3663A(a)(3), the Court shall order Dadoun to pay restitution to victims of the scheme in the amount of $3,239,773.43.

Forfeiture

As part of Dadoun's acceptance of responsibility, and (1) pursuant to 18 U.S.C. § 982(a)(2), Dadoun agrees to forfeit to the United States all of right, title, and interest in any property, real or personal, which constitutes or was derived from proceeds Dadoun obtained that are traceable to the offense charged in Count 1 of the Information, and (2) pursuant to 18 U.S.C. § 982(a)(1), Dadoun agrees to forfeit to the United States, any and all property involved in, or traceable to, the money laundering offense charged in Count 2 of the Information. Dadoun further acknowledges that the value of such property was $2,125,000; that one or more of the conditions set forth in 21 U.S.C. § 853(p) exists; and that the United States is entitled to forfeit substitute assets equal to the value of the proceeds obtained by the defendant, in an amount not to exceed $2,125,000 (the "Money Judgment"). Dadoun consents to the entry of an order requiring Dadoun to pay the Money

Judgment, in the manner described below (the "Order"), and that the Order will be final as to Dadoun prior to sentencing, pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, and which may be satisfied in whole or in part with substitute assets.

All payments made in full or partial satisfaction of the Money Judgment shall be made by postal money order, bank, or certified check, made payable in this instance to the United States Marshals Service, indicating the defendant's name and case number on the face of the check; and shall be delivered by mail to the United States Attorney's Office, District of New Jersey, Attn: Asset Recovery and Money Laundering Unit, 970 Broad Street, 7th Floor, Newark, New Jersey 07102

Dadoun further agrees that upon entry of the Order, this Office may conduct any discovery needed to identify, locate, or dispose of property sufficient to pay the Money Judgment in full or in connection with any petitions filed with regard to proceeds or substitute assets, including depositions, interrogatories, and requests for production of documents, and the issuance of subpoenas.

Dadoun waives the requirements of Fed. R. Crim. P. 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Dadoun understands that criminal forfeiture is part of the sentence that may be imposed in this case and waives any failure by the court to advise Dadoun of this pursuant to Fed. R. Crim. P. 11(b)(1)(J) at the guilty plea proceeding. Dadoun waives all constitutional, statutory, and other challenges to the forfeiture on all grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment. Dadoun further understands that Dadoun has no right to demand that any forfeiture of Dadoun's assets be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon Dadoun in addition to forfeiture.

Dadoun further agrees that, not later than the date Dadoun enters a guilty plea, Dadoun will provide a complete and accurate Financial Disclosure Statement on the form provided by this Office. If Dadoun fails to do so, or if this Office determines that Dadoun has intentionally failed to disclose assets on the Financial Disclosure Statement, that failure constitutes a material breach of this agreement, and this Office reserves the right, regardless of any agreement or stipulation that might otherwise apply, to oppose any downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, and to seek leave of the Court to withdraw from this agreement or seek other relief.

<u>Rights of This Office Regarding Sentencing</u>

Except as otherwise provided in this agreement, this Office may take any position with respect to the appropriate sentence to be imposed on Dadoun by the

sentencing judge. This Office may also correct any misstatements relating to the sentencing proceedings and provide the sentencing judge and the United States Probation Office all law and information relevant to sentencing, favorable or otherwise. And this Office may inform the sentencing judge and the United States Probation Office of: (1) this agreement; and (2) the full nature and extent of Dadoun's activities and relevant conduct with respect to this case.

### Stipulations

This Office and Dadoun will stipulate at sentencing to the statements set forth in the attached Schedule A, which is part of this plea agreement. Both parties understand that the sentencing judge and the United States Probation Office are not bound by those stipulations and may make independent factual findings and may reject any or all of the parties' stipulations. Nor do these stipulations restrict the parties' rights to respond to questions from the Court and to correct misinformation that has been provided to the Court.

This agreement to stipulate on the part of this Office is based on the information and evidence that this Office possesses as of the date of this agreement. Thus, if this Office obtains or receives additional evidence or information prior to sentencing that it believes materially conflicts with a Schedule A stipulation, that stipulation shall no longer bind this Office. A determination that a Schedule A stipulation is not binding shall not release the parties from any other portion of this agreement, including any other Schedule A stipulation.

If the sentencing court rejects a Schedule A stipulation, both parties reserve the right to argue on appeal or at post-sentencing proceedings that the sentencing court did so properly. Finally, to the extent that the parties do not stipulate to a particular fact or legal conclusion in this agreement, each reserves the right to argue how that fact or conclusion should affect the sentence.

### Waiver of Appeal and Post-Sentencing Rights

As set forth in Schedule A and the paragraph below, this Office and Dadoun waive certain rights to appeal, collaterally attack, or otherwise challenge the judgment of conviction or sentence.

### Immigration Consequences

Dadoun understands that, if Dadoun is not a citizen of the United States, Dadoun's guilty plea to the charged offenses will likely result in Dadoun being subject to immigration proceedings and removed from the United States by making Dadoun deportable, excludable, or inadmissible, or ending Dadoun's naturalization. Dadoun understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. Dadoun wants

and agrees to plead guilty to the charged offenses regardless of any immigration consequences of this plea, even if this plea will cause Dadoun's removal from the United States. Dadoun understands that Dadoun is bound by this guilty plea regardless of any immigration consequences. Accordingly, Dadoun waives any right to challenge the guilty plea, sentence, or both based on any immigration consequences. Dadoun also agrees not to seek to withdraw this guilty plea, or to file a direct appeal, or any kind of collateral attack challenging the guilty plea, conviction, or sentence, based on any immigration consequences of the guilty plea or sentence.

Other Provisions

This agreement is limited to the United States Attorney's Office for the District of New Jersey and cannot bind other federal, state, or local authorities. If requested to do so, however, this Office will bring this agreement to the attention of other prosecuting offices.

This agreement was reached without regard to any civil or administrative matters that may be pending or commenced in the future against Dadoun. So this agreement does not prohibit the United States, any agency thereof (including the Internal Revenue Service and Immigration and Customs Enforcement) or any third party from initiating or prosecuting any civil or administrative proceeding against him.

No provision of this agreement shall preclude Dadoun from pursuing in an appropriate forum, when permitted by law, a claim that he received constitutionally ineffective assistance of counsel.

## No Other Promises

This agreement constitutes the entire plea agreement between Dadoun and this Office and supersedes any previous agreements between them. No additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties.

Very truly yours,

VIKAS KHANNA
Acting United States Attorney

*/s/ Katherine M. Romano*

By:   Katherine M. Romano
Assistant U.S. Attorney

APPROVED:

*Bernard J. Cooney*

Bernard J. Cooney
Chief, Health Care Fraud Unit

I have received this letter from my attorney, Anthony J. Pope, Esq. I have read it. My attorney and I have reviewed and discussed it and all of its provisions, including those addressing the charges, sentencing, stipulations (including the attached Schedule A), waiver, forfeiture, restitution, and immigration consequences. I understand this letter fully and am satisfied with my counsel's explanations. I accept its terms and conditions and acknowledge that it constitutes the plea agreement between the parties. I understand that no additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties. I want to plead guilty pursuant to this plea agreement.

AGREED AND ACCEPTED:

_____          Date:   05 February 2025
Daniel Dadoun

I have reviewed and discussed with my client this plea agreement and all of its provisions, including those addressing the charges, sentencing, stipulations (including the attached Schedule A), waiver, forfeiture, restitution, and immigration consequences. My client understands this plea agreement fully and wants to plead guilty pursuant to it.

_____          Date: 2/6/25
Anthony J. Pope, Esq.
Counsel for Defendant

Plea Agreement With Daniel Dadoun

Schedule A

1. This Office and Dadoun recognize that the United States Sentencing Guidelines do not bind the sentencing judge. Each party nevertheless agrees to these stipulations.

2. The version of the Guidelines effective November 1, 2024 applies in this case.

### Count 1: Bank Fraud

3. The applicable guideline is U.S.S.G. § 2B1.1(a)(1). This guideline carries a Base Offense Level of 7.

4. Because this offense, including applicable relevant conduct, involved loss totaling more than $1,500,000 but less than $3,500,000, the Specific Offense Characteristic results in an increase of 16 levels. U.S.S.G. § 2B1.1(b)(1)(I).

5. Because the defendant derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense, including all relevant conduct under U.S.S.G. § 1B1.2(c), the Specific Offense Characteristic results in an increase of 2 levels. U.S.S.G. § 2B1.1(b)(17)(A).

6. The offense level for Count 1 is 25.

### Count 2: Money Laundering

7. The applicable guideline is U.S.S.G. § 2S1.1, which requires the application of U.S.S.G. § 2B1.1, the applicable guideline for the underlying offense from which the laundered funds were derived (*i.e.*, bank fraud). U.S.S.G. § 2S1.1(a)(1).

8. The base offense level under U.S.S.G. § 2S1.1 is therefore 25, as described in Paragraphs 3 through 6 above.

9. Because the offense charged in Count 2 of the Information is violation of 18 U.S.C. § 1957, the offense level is increased by 1 level. *See* U.S.S.G. § 2S1.1(b)(2)(A).

10. The offense level for Count 2 is thus 26.

### Grouping of Multiple Counts

11. Pursuant to U.S.S.G. § 3D1.2(d), Counts 1 and 2 are grouped together into a single group because the offense level for each count is determined largely on

the basis of total amount of harm or loss. Because the counts involve offenses of the same general type to which different guidelines apply, the offense guideline that produces the highest offense level is applied. *See* U.S.S.G. § 3D1.3(b).

12. The adjusted offense level is therefore 26.

### Acceptance of Responsibility and Plea

13. As of the date of this letter, Dadoun has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for the offenses charged. Therefore, a downward adjustment of 2 levels for acceptance of responsibility is appropriate if Dadoun's acceptance of responsibility continues through the date of sentencing. *See* U.S.S.G. § 3E1.1(a).

14. As of the date of this letter, Dadoun has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting this Office to avoid preparing for trial and permitting this Office and the court to allocate their resources efficiently. At sentencing, this Office will move for a further 1-point reduction in Dadoun's offense level pursuant to U.S.S.G. § 3E1.1(b) if the following conditions are met: (a) Dadoun enters a plea pursuant to this agreement, (b) this Office, in its discretion, determines that Dadoun's acceptance of responsibility has continued through the date of sentencing and Dadoun therefore qualifies for a 2-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), and (c) Dadoun's offense level under the Guidelines prior to the operation of § 3E1.1(a) is 16 or greater.

15. If Dadoun establishes at sentencing that he has no criminal history points and meets the other criteria in U.S.S.G. § 4C1.1, he will be entitled to a further two-level reduction in his offense level, resulting in a total Guidelines offense level of 21; otherwise, Dadoun's total Guidelines offense level will be 23 (the "Total Offense Level").

16. The parties agree not to advocate for any upward or downward adjustment or departure from the Guidelines range resulting from (a) the Total Offense Level and (b) the criminal history category that the sentencing judge applies under Chapter 4 of the Guidelines without any departure or variance. But each party may seek a variance from that Guidelines range, which the other party may oppose.

17. If the term of imprisonment does not exceed 57 months (if § 4C1.1 does not apply), or 46 months (if § 4C1.1 does apply), and except as specified in the next paragraph below, Dadoun will not challenge or seek to reduce by any means any component of the sentence imposed by the sentencing judge for any reason other than ineffective assistance of counsel. The term "any means" includes a direct appeal under 18 U.S.C. § 3742 or 28 U.S.C. § 1291, a motion to vacate the sentence

under 28 U.S.C. § 2255, a motion to reduce the term of imprisonment under 18 U.S.C. § 3582(c)(1)(B) or (c)(2), a motion for early termination of supervised release under 18 U.S.C. § 3583(e)(1), and any other appeal, motion, petition, or writ, however captioned, that seeks to attack or modify any component of the sentence. If the term of imprisonment is at least 46 months (if § 4C1.1 does not apply), or 37 months (if § 4C1.1 does apply), this Office will not challenge by appeal, motion, or writ any component of the sentence imposed by the sentencing judge. The provisions of this paragraph bind the parties even if the sentencing judge employs a Guidelines analysis different from the one above.

18. Both parties reserve the right to file or to oppose any appeal, collateral attack, writ or motion not barred by the preceding paragraph or any other provision of this plea agreement. Moreover, the preceding paragraph does not apply to:

    (a) Any proceeding to revoke the term of supervised release.

    (b) A motion to reduce the term of imprisonment under 18 U.S.C. § 3582(c)(1)(A).

    (c) An appeal from the denial of a § 3582(c)(1)(A) motion on the grounds that the court erred in finding no extraordinary and compelling circumstances warranting a reduced term of imprisonment or that the court failed to consider those circumstances as a discretionary matter under the applicable factors of 18 U.S.C. § 3553(a).